CHARLES L. HASTINGS　SBN 88599
NATALI A. RON　SBN 302927
PMB#270, 4719 Quail Lakes Drive, Suite G
Stockton, California 95207
Telephone: (209) 476-1010
Facsimile: (209) 952-7854
chastings@hastingslawoffice.com

Attorneys for Petitioning Creditors

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>DAVE R. MICHAL<br><br>　　　Involuntary Debtor. | Case No.: 22-22056<br>Chapter 7<br>DCN: DBL-2<br><br>**PETITIONING CREDITORS' OPPOSITION TO INVOLUNTARY DEBTOR'S MOTION TO DISMISS, AND FOR ATTORNEY FEES, COSTS AND SANCTIONS**<br><br>Date: October 3, 2022<br>Time: 9:00 a.m.<br>The Honorable Fredrick E. Clement<br>Courtroom 28, Department A |

Come now the Petitioning Creditors who oppose the debtor's motion to dismiss and for attorney fees, costs and sanctions on the following grounds:

**THE MOTION TO DISMISS IS PROCEDURALLY IMPROPER AND NOT PROVIDED FOR IN EITHER THE BANKRUPTCY CODE, THE BANKRUPTCY RULES, NOR THE FEDERAL RULES OF CIVIL PROCEDURE**

OPPOSITION TO INVOLUNTARY DEBTOR'S MOTION TO DISMISS　1

Debtor has claimed 11 USC § 303(b)(1) and FRCP 1011(d) as his authority for bringing his motion to dismiss. However, those references are curious as neither of them provide such authority. 11 USC ss 303(b)(1) states:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $10,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

FRCP 1011(d) states:

> (d) Claims Against Petitioners. A claim against a petitioning creditor may not be asserted in the answer except for the purpose of defeating the petition.

There is no reference in either section cited which provides authority for debtor's motion. Perhaps debtor intended to cite FRCP 1011(c) which provides:

> (c) Effect of Motion. Service of a motion under Rule 12(b) F.R.Civ.P. shall extend the time for filing and serving a responsive pleading as permitted by Rule 12(a) F.R.Civ.P.

FRCP 12(a) provides for the general time period for a defendant (involuntary debtor) to file an answer to the petition. FRCP 12(b) provides the only authority for the filing of a motion to bring certain defenses. However, none of the defenses itemized in FRCP 12(b) include the defense debtor is attempting to raise. Specifically, FRCP 12(b) provides:

> (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
> (1) lack of subject-matter jurisdiction;
> (2) lack of personal jurisdiction;
> (3) improper venue;
> (4) insufficient process;
> (5) insufficient service of process;
> (6) failure to state a claim upon which relief can be granted; and
> (7) failure to join a party under Rule 19.
> A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

OPPOSITION TO INVOLUNTARY DEBTOR'S MOTION TO DISMISS 2

Filed 09/19/22   Case 22-22056   Doc 18

As can be seen, there is no authority to present the defense that the debtor is generally paying his debts as they become due by way of a motion to dismiss. If the debtor believes he can prevail on this factual issue, he should file an answer asserting such and the matter can be decided by trial, as provided for in 11 USC § 303(h). However, given that the debtor is not paying 97.4% of his debts as shown below, it is highly unlikely such a defense will prevail.

## THE DEBTOR'S CLAIM THAT HE IS GENERALLY PAYING HIS DEBTS AS THEY BECOME DUE IS UNMERITORIOUS AND DISINGENUOUS

The debtor claims in his motion that he "has a stellar record of paying *all of his debts* on time." (Emphasis added) See Motion, page 3; line 5. He further claims, at several points that petitioning creditors have falsely alleged that he is not generally paying his debts as they become due. He bases these statements on the entries in the credit report he submits, which he claims shows he is paying 4 creditors totaling $125,028 without entity of any late payments noted. However, the debtor, in his declaration acknowledges the judgment held by the petitioning creditors was entered against him. What he does not tell the Court is that judgment was entered against him February 10, 2017, in North Carolina, as well as entered as a sister-state judgment in Shasta County, California on November 30, 2017, in the sum of $3,400,435 and remains unpaid and outstanding today. See Request for Judicial Notice -Exhibit 4. There have been no payments made on that judgment. The balance owed on that judgment is, at a minimum $4,777,759.80. That represents 97.4% of the debtor's admitted debts.

The debtor further implies that he is paying his debts from income he receives from acting as a "trustworthy Private Lending Investment Manager." See Dec. of Dave R. Michal para. 7. Although he does not tell us in his declaration under what business entity he performs such activity, in his motion he claims to operate a business and owns multiple entities. See Motion page 2; line 4 and page 7; line 17-19. Both statements are directly contrary to previous sworn testimony by the debtor. Prior to filing this involuntary petition, petitioning creditors served the debtor with an Examination of Judgment Debtor (OEX) in the Shasta County case. In lieu of attending the OEX, the debtor submitted a sworn declaration

as of June 9, 2022, concerning his income and assets. In that declaration he testified he has had *no source of income in the past five years.* See Dec of Nick Scargdigli and Exhibit 1.

That is not the only statement made in the moving documents that contradicts the debtor's sworn testimony. In the moving documents, he claims he owns multiple business entities as stated above, and that he owns "companies that have small minority interests" in an office building in downtown Wilmington, North Carolina. See motion page 2; line 12-14 and Dec of Dave R. Michal para 4. In the same declaration the debtor submitted in lieu of the OEX, he testified that he only owned an interest in one entity (Reaven, Inc., a Nevada corp.) and that he held *no ownership or financial interest in any real estate in the past 5 years.* See Scardigli Dec and Exhibit 1.

Whether the debtor is paying four of his five admitted creditors is not dipositive of the issue as to whether he is generally paying his debts as they become due. In a case, with facts substantially like those in the instant matter, the Ninth Circuit Bankruptcy Appellate Panel in its unpublished decision *Morabito v. JH, Inc. (In re Morabito)* (B.A.P. 9th Cir. 2016) BAP No. NV-14-1593-FBD, reviewed the law on the factors to be taken into consideration when deciding whether a debtor is generally paying its debts as they come due. While the case is obviously not controlling it does provide an excellent analysis of the law. In *Moribito,* the debtor was paying his living expenses and other debts excluding the debt he owed under a large judgment to the petitioning creditor of $77,000,000. In analyzing the determination of the Bankruptcy Court that the debtor was not generally paying his debts as they came due, the BAP held at page 19:

> The Ninth Circuit has "adopted a 'totality of the circumstances' test for determining whether a debtor is generally not paying its debts under 11 U.S.C. § 303(h)." Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.), 277 F.3d 1057, 1072 (9th Cir. 2002) (quoting Hayes v. Rewald (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.), 779 F.2d 471, 475 (9th Cir. 1985))
> […]
> The "totality of the circumstances test" is not a rigid, mathematic analysis: "The authority of the court is triggered and guided by the totality of the circumstances existing when the petition is filed. Congress intended to provide a flexibility which is not reducible to a simplistic formula." In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc., 779 F.2d at 475. "[I]t is not possible to lay down guidelines that fit all cases . . . . It is intended that the court consider both the number and amount [of debts] in determining whether the inability or failure is general." 2 Collier on Bankruptcy ¶ 303.31 (16th ed.) (quoting Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 137, 93d Cong., 1st Sess. Pt. II, 75 n.5 (1973)).

The Ninth Circuit has cited with approval an Eleventh Circuit decision holding that, "[i]n determining whether a debtor is generally paying its debts as they become due, courts 'compare the number of debts unpaid each month to those paid, the amount of the delinquency, the materiality of the non-payment, and the nature of the [d]ebtor's conduct of its financial affairs.'" In re Vortex Fishing Sys., Inc., 277 F.3d at 1072 (quoting Gen. Trading Inc. v. Yale Materials Handling Corp., 119 F.3d 1485, 1504 n.41 (11th Cir. 1997)).

In the present case, the bankruptcy court found that there was no dispute of material fact that Mr. Morabito was generally not paying his debts as they became due. It so held because he was not paying at least 98% of his debts; the size of the debt owed to Appellees swamped his other debt; and he and Mr. Bayuk were paying off all other debts to isolate Appellees. It concluded that "[t]he amount of delinquency, the materiality of debt and nonpayment, the nature of the conduct of Morabito's affairs, and the inconsistent positions taken by Morabito and Bayuk before the Court by declarations, pleadings and Morabito's testimony in deposition demonstrate that, under a totality of circumstances, Morabito was not generally paying his debts as they became due on the Petition Date." The bankruptcy court did not err.

a. Amount of delinquency

While it may be true that Mr. Morabito was current on all other debt payments thanks to Mr. Bayuk's largess, it is undisputed that he was not making payments on Appellees' claim. It is also not disputed that his debt to Appellees constituted at least 98% of his outstanding debt. We find no error in the court's consideration of the unpaid debt as a percentage of Mr. Morabito's overall debt. See Focus Media, Inc. v. Nat'l Broadcasting Co., Inc. (In re Focus Media, Inc.), 378 F.3d 916, 929 (9th Cir. 2004) (agreeing that, under the totality of the circumstances, "[h]aving 80% of your debts over 90 days old is not paying debts as they come due").

The present case fits the analysis of the BAP to a tee. Here the debtor has been choosing to pay his other creditors to the exclusion of the petitioning creditors and their predecessor in interest for several years. He claims to be a successful Private Lending Investment Manager when it is convenient to do so, but when the petitioning creditors were on his trail to collect their judgment, he testified he owned essentially no assets and had no income for the past 5 years. The truth of the matter is the debtor has over 95% of his debt that is years old (not merely 90 days old) and he is not generally paying his debts as they become due.

Also similar to the debtor in *Moribito*, the debtor here is playing fast and loose with the facts and other peoples' money. He implies that the petitioning creditors "incorrectly turned to the Courts" when they attempted to obtain a charging order against an entity that the debtor held an interest in. The truth of the matter is the debtor held an interest in a building being sold for $8,250,000 (See Declaration of Robert Deutsch, para 15-16 and Exhibit 2, page 92) and while the petitioning creditors did make an error (they incorrectly believed the entity was an LLC when in fact it was a corporation), the error had nothing to do

with the validity of their action nor the debt owed by the debtor. Notably, the debtor does not deny that he (perhaps indirectly, perhaps directly) owned an interest in the building. Of course, the debtor makes no mention of the sale of the building for $8,250,000, nor how much his entity received nor what happened to the money. Certainly, none of it has been applied to the petitioning creditors' judgment.

## THE DEBTOR'S CLAIM THE PETITIONERS HAVE ACTED IN BAD FAITH BY "FAILING TO PERFORM DUE DILIGENCE" IS FACTUALLY INACCURATE AND LEGALLY INSUFFICIENT FOR THE COURT TO FIND THEY FILED THIS PETITION IN BAD FAITH AND DOES NOT SUPPORT A CLAIM FOR DAMAGES

The debtor's claim that the petitioners have acted in bad faith is premised on the debtor's perception that the petitioners failed to obtain a credit report on the debtor prior to filing this petition. Not only is there no authority asserted by the debtor for such a proposition, but there is also no merit to the claim. The debtor has cited 11 USC § 303(i)(2) as his authority that "failure to perform due diligence alone is evidence of a bad-faith filing." See motion page 5; lines 23-26. 11 USC§ 303 (i)(2) provides nothing of the sort. Debtor cites no authority for the proposition and petitioning creditors have been unable to find one.

The claim that petitioning creditors could, and should, have obtained a copy of debtor's credit report shows a lack of understanding of the law concerning credit reports. Debtor contends that because petitioning creditors have his social security number, they could have obtained a credit report on the debtor and learned he was paying four creditors listed.

The federal Fair Credit Reporting Act (FCRA) mandates regulations and rules for the entire credit reporting industry, and it protects one's private information by restricting access to credit reports to only those who have what's known as "permissible purpose" to perform a credit inquiry.

15 U.S. Code § 1681b proscribes who may obtain a person's credit report:
Permissible purposes of consumer reports
(a)In general

OPPOSITION TO INVOLUNTARY DEBTOR'S MOTION TO DISMISS 6

> Subject to subsection (c), any consumer reporting agency may furnish a consumer report under the following circumstances and no other:
> (1) In response to the order of a court having jurisdiction to issue such an order, a subpoena issued in connection with proceedings before a Federal grand jury, or a subpoena issued in accordance with section 5318 of title 31 or section 3486 of title 18.
> (2) In accordance with the written instructions of the consumer to whom it relates.
> (3) To a person which it has reason to believe—
> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
> (B) intends to use the information for employment purposes; or
> (C) intends to use the information in connection with the underwriting of insurance involving the consumer; or
> (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or
> (E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or
> (F) otherwise has a legitimate business need for the information—
> (i) in connection with a business transaction that is initiated by the consumer; or
> (ii) to review an account to determine whether the consumer continues to meet the terms of the account.
> (G) executive departments and agencies in connection with the issuance of government-sponsored individually-billed travel charge cards

As can be plainly seen, without the debtor's consent, the petitioning creditors could not have lawfully obtained the debtor's credit report. However, even if they could have, it would not make any difference as the debtor is not generally paying his debts in any event as set forth above.

Moreover, the petitioning creditors did perform sufficient due diligence in determining the debtor held an interest in a valuable building in Wilmington, North Carolina. In that due diligence, they learned the debtor owned that interest through 4 separate layers of corporate and LLC entities. When the petitioning creditors made it known they were attempting to collect the debtor's interest in the building sale proceeds, the debtor was successful in deflecting those efforts long enough that the building was sold for $8,250,000 with none of the proceeds being used to pay the judgment outstanding against the debtor. See Declaration of Deutsch para. 15-16 and Exhibit 2, page 92. Of course, this is entirely consistent with the debtor's previous conduct in defrauding his former business associate, Marshal Melton and the petitioning creditors out of the millions of dollars they had invested in other projects controlled or

OPPOSITION TO INVOLUNTARY DEBTOR'S MOTION TO DISMISS 7

managed by the debtor, only to have the debtor, by using multiple corporate layers of ownership, borrow the equity out of the properties for his own use and benefit, thereafter losing the properties to foreclosure. See Declaration of Deutsch para. 3-8.

**FINALLY, DEBTOR'S MOTION WAS NOT TIMELY FILED AND SERVED AND SHOULD BE DENIED ON THAT BASIS.**

The notice of the hearing on the motion is untimely. The Eastern District Bankruptcy Court's Local Rules of Practice 9014-1 (f) requires 28 days' notice of the hearing. In this case, despite the proof of service claiming the Motion and the Notice of Hearing were mailed on September 3, 2022, they were actually mailed on September 6, 2022, providing only 27 days' notice. See Declaration of Charles Hastings and Exhibit 3. Although counsel for the petitioning creditors is a subscriber to the Court's CM/ECF system, he did not receive a copy of the electronic version of the motion from the Court until September 6, 2022. The proof of service filed with the motion indicates the documents were mailed on September 3, not served via the Court's CM/ECF system. The envelope containing the documents clearly indicates they were not mailed until September 6. This is not proper notice.

## CONCLUSION

The Court should deny the motion in its entirely for all of the above reasons and set a time for the filing of an answer to the petition. The debtor has not filed an answer to the petition. The Clerk's office has treated this motion as a response to the petition, requiring a Motion to Set the Matter for Trial. Until an answer is filed, the matter is not at issue.

Dated: September 19, 2022           BY: _____

CHARLES HASTINGS, ESQ.
Attorney for Petitioning Creditors

OPPOSITION TO INVOLUNTARY DEBTOR'S MOTION TO DISMISS  8