1  CHARLES L. HASTINGS
   CA State Bar No.: 88599
2  NATALI A. RON
   CA State Bar No.: 302927
3  Law Offices of Hastings & Ron
   4568 Feather River Dr., Ste. A
4  Stockton, CA 95219
   (209) 476-1010
5  chastings@hastingslawoffice.com

6  Attorneys for Petitioning Creditors

7

8              UNITED STATES BANKRUPTCY COURT

9      EASTERN DISTRICT COURT OF CALIFORNIA – SACRAMENTO DIVISION

10

11 In re:                          CASE NO.:  2022-22056
                                   CHAPTER 7
12 DAVID R. MICHAL
                                   PETITIONING CREDITORS' TRIAL BRIEF
13 Debtor.
                                   DOCKET CONTROL NO: FEC-5
14
                                   DATE:  JUNE 01, 2023
15                                 TIME:  9:00 A.M.
                                   HONORABLE FREDRICK E. CLEMENT
16                                 LOCATION: 501 "I" ST., 7TH FL.,
                                   SACRAMENTO, CALIFORNIA
17                                 COURTROOM 28, DEPARTMENT A

PETITIONING CREDITORS' TRIAL BRIEF- 1

## **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................5

II. STATEMENT OF FACTS ..............................................................................................5

III. LEGAL AUTHORITY ...................................................................................................9

    A. PETITIONER CREDITORS HAVE MET THE REQUIREMENTS FOR FILING AN INVOLUNTARY PETITION UNDER 11 U.S.C. §303 .............................................................9

        1. THE PETITIONER CREDITORS HAVE MET THE NUMEROSITY REQUIREMENTS .......................................................................................................................9

            i. The Debtor Does Not Have 12 or More Creditors..............................................9

            ii. The Petitioning Creditors Represent Three Creditors .....................................11

        2. THE DEBTOR IS GENERALLY NOT PAYING HIS DEBTS AS THEY BECOME DUE AND SUCH DEBTS ARE NOT THE SUBJECT OF A BONA FIDE DISPUTE AS TO LIABILITY OR AMOUNT.................................................................................................13

            i. The Debtor is Generally Not Paying His Debts as They Become Due............13

            ii. The Debtor's Debts are NOT the Subject of a Bona Fide Dispute as to Liability or Amount.................................................................................................................16

IV. CONCLUSION.............................................................................................................16

# TABLE OF AUTHORITIES
## CASES

*Cunningham v. Rothery (In re Rothery)*, 143 F.3d 546, 548 (9th Cir. 1998) ..................................................10

*Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1504 n.41 (11th Cir. 1997 ..............15

*Hayden v. QDOS, Inc. (In re QDOS, Inc.)*, 607 B.R. at 343 (B.A.P. 9th Cir. 2019) .....................................10

*Hayes v. Rewald (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.)*, 779 F.2d 471, 475 (9th Cir. 1985) ..............................................................................................................................................15,16

*In re Dill*, 731 F.2d 629, 632 (9th Cir. 1984) ..................................................................................................15

*In re Feinberg*, 238 B.R. 781 (B.A.P. 8th Cir. 1999) ................................................................................16, 17

*In re Garland Coal Min. Co.*, 67 B.R. 514 at 519 (Bankr.WD.Ark. 1986) ..............................................10, 11

*In re Kidwell*, 158 B.R. 203 (Bankr. ED. Cal. 1993) ......................................................................................10

*In re Mid-America Indus., Inc.*, 236 B.R. 640 (Bankr. N.D.Ill. 1999) ...........................................................14

*In re Norris*, 193 B.R. 437, 452 (Bankr.W.D.La. 1995) ................................................................................10

*In re Skye Marketing Corp.*, 11 B.R. 891 (Bkrtcy.E.D.N.Y. 1981) ...............................................................10

*In re Stewart*, Case No.: 14-03177 at 16 (Bankr. S.D. Ala. Mar. 18, 2015) ..................................................11

*In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1064 (9th Cir. 2002) ................................................10, 15

*In re Zapas*, 530 B.R. 560 (Bankr. E.D.N.Y. 2015) .......................................................................................13

*In re: Richard L. Priddis*; No. 22-15457, D.C. No. 2:21-cv-01053-JJT ...................................................13, 14

*Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1072 (9th Cir. 2002) ................................................................................................................................................15

*Matter of International Teldata Corp.*, 12 B.R. 879 (Bkrtcy.D.Nev.1981) ...................................................10

*Morabito v. JH, Inc. (In re Morabito)*, 2016 WL 3267406* 8-9 (9TH Cir. B.A.P. 2016) .................10, 14, 15

*Murrin v. Hanson (In re Murrin)*, 477 B.R. 99 (D. Minn. 2012) ..................................................................16

*Pennsylvania Dept. Public Welfare v. Davenport*, 495 U.S. 552 (1990) ......................................................13

## STATUTES

11 U.S.C. §101(41) .........................................................................................................................................13

11 U.S.C. §101(5) ...........................................................................................................................................13

PETITIONING CREDITORS' TRIAL BRIEF- 3

11 U.S.C. §303 ............................................................................................................... 5, 10, 12, 17
11 U.S.C. §303(b) ........................................................................................................ 10, 11, 12, 13
11 U.S.C. 303(b)(2) ................................................................................................................... 10
11 U.S.C. § 303(h)(1) ............................................................................................................. 5, 14
11 U.S.C.§544 .......................................................................................................................... 10
11 U.S.C. §545 ......................................................................................................................... 10
11 U.S.C §547 ..................................................................................................................... 10, 11
11 U.S.C. §548 ......................................................................................................................... 10
11 U.S.C. §549 ..................................................................................................................... 10, 11
11 U.S.C. §724(a) ..................................................................................................................... 10

## OTHER AUTHORITIES

Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 137, 93d Cong., 1st Sess. Pt. II, 75 n.5 (1973) ........................................................................................................................ 15

## I. INTRODUCTION

11 U.S.C. §303 authorizes creditors to file a Chapter 7 bankruptcy on behalf of an individual who is not paying his or her undisputed debts. In the present case, the issues that must be resolved at trial are as follows: (1) does David Michal (hereinafter the "Debtor") have 12 or more creditors; (2) how many creditors do the petitioning creditors represent; and (3) is the Debtor "generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h)(1).

## II. STATEMENT OF FACTS

An Involuntary Chapter 7 Petition was filed against David R. Michal on August 18, 2022, by Petitioning Creditors Sarah Halevy, David H. Walker, Individually and as Trustee of the Sarah H. Walker Trust, and Marjorie B. Walker. Within that petition, the petitioning creditors alleged that the Debtor was generally not paying his debts as they became due. The nature of the Petitioner Creditors' debt is an assignment of judgment stemming from a lawsuit by Marshall Melton, individually, Investment Property Funds I, LLC, West Bay Partners, LLC, and Integrated Consulting & Management, LLC against BHB of Georgia, LLC and David R. Michal. An assignment of such judgment was entered into by Marshall Melton, individually, Investment Property Funds I, LLC, West Bay Partners, LLC, and Integrated Consulting & Management, LLC, and the Petitioning Creditors, on April 26, 2021. Additionally, on that same day, a Collection Agreement was entered into by the Petitioning Creditors.

Per the Joint Stipulation filed on May 10, 2023 (Doc 91), the Parties have stipulated to the following facts:

1. Petitioning Creditors collectively hold a judgment entered in North Carolina General Court of Justice, case number 16 CVS 7519, against the alleged debtor in the face amount of $3,400,000. That judgment remains unsatisfied at this time. Exhibits A-C.

2. There are credits against that judgment in the aggregate amount of $155,981.11, which were applied prior to the assignment to the Petitioning Creditors on April 26, 2021. Exhibit DD.

3. Petitioning Creditors collectively hold a judgment entered in California Superior Court of Shasta County, Case Number 188809, entered on December 6, 2017, against the alleged debtor

in the face amount of $3,400,435. This California judgment is based on the North Carolina judgment, and not in addition to the North Carolina judgment.

4. Eldena Cross holds a separate judgment entered in California Superior Court of Nevada County, case number CU17-082183 against the alleged debtor in the amount of $1,078,778.70, entered on July 13, 2018. There have been no payments or credits against that judgment since it was entered. Ms. Cross recorded an Abstract of that Judgment on August 11, 2022, in the Shasta County Recorder's Office. Exhibits D and CC.

5. The alleged debtor has identified the following creditors pursuant to FRBP 1003(b) as the creditors he owed the following amounts on the date of the petition herein (August 18, 2022):

a. Capital One N.A.　　　　　　　　　$16,207.00
b. Citibank Credit Card　　　　　　　$3,662.00
c. Sierra Central Credit Union　　　　$47,917.00 and $53,385.00
d. U.S. Bank　　　　　　　　　　　　$35,239.00
e. The Lewallen 2000 Trust　　　　　$410,000.00 and $200,000.00
f. Shasta County Tax Collector　　　　$4,345.96
g. State Farm Insurance　　　　　　　$737.34 per month
h. City of Redding　　　　　　　　　No Amount Specified
i. Pacific Gas & Electric　　　　　　No Amount Specified
j. Spectrum　　　　　　　　　　　　$94.98 per month
k. Direct TV　　　　　　　　　　　$72.13 per month
l. Verizon　　　　　　　　　　　　　$47.01

Exhibit G

6. Prior to August 18, 2022, the following payments were made from the community property of the alleged debtor and his wife, Christine Michal, to the following creditors:

|    | Creditor  | Date      | Amount    | Supporting Exhibits |
|----|-----------|-----------|-----------|---------------------|
| a. | Citi Card | 5/26/2022 | $1,489.61 | Exhibit I; page I-1 |
| b. | Citi Card | 6/22/2022 | $2,743.93 | Exhibit J, page J-1 |
| c. | Citi Card | 7/21/2022 | $970.33   | Exhibit K; page K-1 |
| d. | Citi Card | 7/21/2022 | $1,505.07 | Exhibit K; page K-1 |
| e. | Citi Card | 8/11/2022 | $1,968.80 | Exhibit L; page L-1 |
| f. | U.S. Bank | 6/2/2022  | $2,000.00 | Exhibit I; page I-1 |

|  | Creditor | Date | Amount | Supporting Exhibits |
|---|---|---|---|---|
| g. | U.S. Bank | 6/30/2022 | $2,000.00 | Exhibit J; page J-1 |
| h. | U.S. Bank | 8/3/2022 | $2,000.00 | Exhibit K; page K-1 |
| i. | State Farm | 5/24/2022 | $736.58 | Exhibit I; page I-1 |
| j. | State Farm | 6/21/2022 | $692.18 | Exhibit J; page J-1 |
| k. | State Farm | 7/21/2022 | $737.34 | Exhibit K; page 008 |

7. Following the date of the petition, the following payments were made from the community property of the alleged debtor and wife, Christine Michal, to the following creditors:

|  | Creditor | Date | Amount | Supporting Exhibits |
|---|---|---|---|---|
| a. | Citi Card | 8/25/2022 | $224.44 | Exhibit L; page L-1<br>Exhibit Q; page Q-2 |
| b. | Citi Card | 8/25/2022 | $5,729.16 | Exhibit L; page L-1<br>Exhibit R; page R-2 |
| c. | Citi Card | 8/30/2022 | $4,905.20 | Exhibit L; page L-1<br>Exhibit R; page R-2 |
| d. | Citi Card | 8/30/2022 | $9,075.34 | Exhibit L; page L-1<br>Exhibit Q; page Q-2 |
| e. | Citi Card | 9/14/2022 | $4,997.23 | Exhibit M; page M-1<br>Exhibit Q; page Q-2 |
| f. | Citi Card | 9/14/2022 | $5,146.64 | Exhibit M; page M-1<br>Exhibit R; page R-2 |
| g. | Citi Card | 10/6/2022 | $1,742.33 | Exhibit N; page N-1 |
| h. | Citi Card | 10/6/2022 | $1,948.34 | Exhibit N; page N-1 |
| i. | Citi Card | 10/14/2022 | $352.34 | Exhibit N; page N-1 |
| j. | Citi Card | 10/14/2022 | $3,478.34 | Exhibit N; page N-1 |
| k. | Citi Card | 10/26/2022 | $10,103.10 | Exhibit N; page N-1 |
| l. | Sierra Central CU | 8/25/2022 | $1,700.00 | Exhibit U; page U-2 |

|    |                        |                    |            |                                              |
|----|------------------------|--------------------|------------|----------------------------------------------|
| m. | U.S. Bank              | 9/2/2022           | $2,000.00  | Exhibit L; page L-1                          |
| n. | U.S. Bank              | 10/4/2022          | $2,000.00  | Exhibit M; page M-1                          |
| o. | U.S. Bank              | 11/2/2022          | $2,000.00  | Exhibit N; page N-1                          |
| p. | Shasta County          | 12/8-12/10/2022    | $2,297.28  | Exhibit Z; page Z-1                          |
| q. | State Farm Insurance   | 8/22/2022          | $737.34    | Exhibit S; page S-1                          |
| r. | State Farm Insurance   | 9/22/2022          | $737.34    | Exhibit S; page S-1                          |
| s. | City of Redding        | 9/1/2022           | $568.36    | Exhibit V; page V-2                          |
| t. | Pacific Gas & Electric | 8/23/2022          | $36.98     | Exhibit L; page L-1<br>Exhibit AA; page AA-1 |
| u. | Pacific Gas & Electric | 9/23/2022          | $35.94     | Exhibit M; page M-1<br>Exhibit AA; page AA-1 |
| v. | Spectrum               | 8/30/2022          | $94.98     | Exhibit W; page W-2                          |
| w. | Direct TV              | 8/26/2022          | $72.13     | Exhibit X; page X-2                          |
| x. | Verizon                | 8/28/2022          | $201.10    | Exhibit Y; page Y-1                          |

8. Either the alleged debtor, his wife, or an entity they control, has continued to pay the creditors listed in paragraph six (6) above, on a monthly basis subsequent to the date of the involuntary petition.

9. The alleged debtor did not make any regular payments to Capital One after the Involuntary Petition was filed because Capital One closed the account when the Involuntary Petition was filed.

10. The alleged debtor did not make any payments to Petitioning Creditors before or after the Involuntary Petition was filed.

11. The alleged debtor does not receive income.

12. The alleged debtor's wife receives income from Stewardship Partners Group, LLC in which the alleged debtor and his wife own a 50% interest. There are two other members in that LLC. The alleged debtor has declined at this time to identify those members or to provide their relationship to the alleged debtor.

13. Reaven, Inc., an entity owned by the alleged debtor and his wife, indirectly received more than $200,000 from the sale of a commercial building in North Carolina after July 15, 2022. None of that money was used to pay the Petitioning Creditors' judgment, or Ms. Cross's judgment, based on decisions of the alleged debtor and his wife.

### III. LEGAL AUTHORITY

#### A. PETITIONER CREDITORS HAVE MET THE REQUIREMENTS FOR FILING AN INVOLUNTARY PETITION UNDER 11 U.S.C. §303

At trial, the petitioning creditors bear the burden of proof. *Cunningham v. Rothery (In re Rothery)*, 143 F.3d 546, 548 (9th Cir. 1998); *Hayden v. QDOS, Inc. (In re QDOS, Inc.)*, 607 B.R. at 343 (B.A.P. 9th Cir. 2019).. As such, creditors must prove: numerosity, that the petitioning creditors' claims are not subject to a bona fide dispute as to liability or amount, and that the debtor is generally not paying undisputed debts "as they become due." 11 U.S.C. §303(b), (h); *In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1064 (9th Cir. 2002); *Morabito v. JH, Inc. (In re Morabito)*, 2016 WL 3267406* 8-9 (9TH Cir. B.A.P. 2016). Specifically, as to the numerosity requirement, 11 U.S.C. §303(b) requires at least one petitioning creditor if the debtor has fewer than 12 creditors or at least three petitioning creditors if the debtor has 12 or more creditors. *In re Kidwell*, 158 B.R. 203 (Bankr. ED. Cal. 1993), cited by *QDOS, Inc.*, 607 B.R. at 347. Here, Petitioning Creditors will meet their burden of proof under 11. U.S.C. §303 as the numerosity requirements are met, the debtor is generally not paying his debts as they become due, and such debts are not the subject of a bona fide dispute as to liability or amount.

#### 1. THE PETITIONER CREDITORS HAVE MET THE NUMEROSITY REQUIREMENTS

##### i. The Debtor Does Not Have 12 or More Creditors

The number of creditors as related to the numerosity requirement of 11 U.S.C §303 is to be determined as of the date the petition is filed, rather than the date of the hearing. *In re*

*Garland Coal Min. Co.*, 67 B.R. 514 at 519 (Bankr.WD.Ark. 1986); *In re Norris*, 193 B.R. 437, 452 (Bankr.W.D.La. 1995); *In re Skye Marketing Corp.*, 11 B.R. 891 (Bkrtcy.E.D.N.Y. 1981); *Matter of International Teldata Corp.*, 12 B.R. 879 (Bkrtcy.D.Nev.1981). Pursuant to 11 U.S.C. 303(b)(2), creditors that have received transfers that are voidable under §§544, 545, 547, 548, 549, or 724(a), are NOT counted toward the numerosity of 12 creditors. The rationale for excluding from the calculation these transferees of voidable transfers is that they would probably have a bias against a bankruptcy case going forward, since they would be subject to having their payments returned. Under such sections, those creditors who have received voidable transfers get subtracted from determining the alleged debtor's number of creditors for purposes of 11 U.S.C. §303(b).

Under such sections, those creditors who were paid in full before the petition was filed, and those who received payment of prepetition debts post-petition are not counted as creditors for purposes of the twelve-creditor rule. *In re Garland* 67 B.R. 514 at 519. Specifically applicable to the transactions at hand are 11 U.S.C §§547 and 549. §547 provides for the recovery of payments made within 90 days of a bankruptcy filing to the extent that such payments provided the creditor with an advantage in the bankruptcy case vis-a-vis other creditors. Additionally, §549, in pertinent part, permits a trustee to avoid a transfer of property of the estate that occurs during the so-called "gap period" between when an involuntary petition is filed and an order for relief is later entered, if it was a payment on account of a prepetition debt that was either authorized only under §303(f) or that was not authorized by the court. Thus, under §549, transfers of property that occur after the petition date, on account of pre-petition claims are voidable and creditors that have received such payments will not be counted in determining the number of creditors. The reasoning behind such a rule was articulated by Judge Majoney in *In re Stewart*, Case No.: 14-03177 at 16 (Bankr. S.D. Ala. Mar. 18, 2015), in that "[t]he gap period is commonly used by a petitioning creditor to solicit other petitioning creditors. Paying off other creditors during this period defeats any incentive they might have to join the petition. In fact, it gives such creditors something to lose – a voidable transfer – should the bankruptcy proceed."

Debtor had previously testified that he only had 2 creditors in a declaration filed with the Superior Court of the State of California, dated June 9, 2022. Exhibit H. However, Debtor's Statement of Creditors, dated October 31, 2022, listed 12 creditors. Exhibit G. Notably, Debtor had omitted from this Statement a judgment held against him by Eldena Cross in the sum of $1,000,000. Debtor admitted the existence of this judgment. The debtor has not provided the information required by Rule 1003(b) (other than the creditor's name), nor has he amended his statement. Despite this additional creditor, the debtor does not have 12 or more creditors that are to be counted in the numerosity calculation. At least three of the twelve creditors listed in Debtor's 1003(b) Statement received payments during the 90 days prior to the filing of the involuntary petition from the debtor's community property. At least ten of the twelve creditors listed in the Statement have received payment each month following the filing of the Involuntary Petition, either from the debtor, his wife, or an entity they control. Notably, Citi Bank received nearly $20,000 from the debtor and his wife within 7 days after him being personally served with the involuntary petition. As such, the above payments are clearly voidable and such creditors who received the payments cannot be counted for purposes of the twelve-creditor rule. As a result of such payments made by the debtor, it is clear that the debtor is nowhere near having 12 creditors for purposes of 11 U.S.C. §303.

### ii. The Petitioning Creditors Represent Three Creditors

As mentioned above, generally speaking, under 11 U.S.C. §303(b)(1) and (2), if an alleged debtor has 12 or more creditors, then at least three petitioning creditors are required to properly commence an involuntary bankruptcy petition, but if there are fewer than 12 creditors, it only takes one petitioning creditors. While the petitioning creditors are of the opinion that the debtor does not have 12 or more creditors, even if the Court was to find that there are 12 or more creditors, the Petitioner Creditors have met the requirements of 11 U.S.C. §303 as they represent three creditors.

§303(b)(1) allows for the filing of an involuntary petition against a debtor if commenced by "three or more entities, each of which is…a holder of a claim against such [debtor.]" A "claim" is defined as a "right to payment, whether or not such a right is reduced to a judgment" or a

"right to an equitable remedy for breach of performance if such breach gives rise to a right to a payment." 11 U.S.C. §101(5). The term "claim" is applied broadly. Additionally, §101(5) defines an "entity" as "a person, estate, trust or governmental unit, and the United States Trustee." A person includes an "individual, partnership, and corporation, but does not include governmental entity." 11 U.S.C. §101(41). The Petitioning Creditors satisfy all of the requirements set by the above-mentioned statutes as they are individuals qualifying as "entities." However, the crux of the issue here is whether the Petitioner Creditors here *each have a "right to a payment."*

In *In re Zapas*, 530 B.R. 560 (Bankr. E.D.N.Y. 2015), an involuntary petition was filed by four individuals holding a single judgment (the "judgment creditors") and another creditor, who was later joined by a subsequent creditor (the "petitioning creditors.") There, as in the instant case, the debtor contended that the judgment creditors counted as one petitioning creditor under §303(b) because they held "one unseparated judgment," and thus one claim, for $656,683.15. Ultimately, the Court found that "under the plain language of the Code, the Judgment Creditors [were] each the 'holder of a claim' against [debtor] based on the pre-petition state court judgment which [was] at [the] time, valid and enforceable." *Id* at 563. There, the court stated that "the existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment, and (2) whether that right arose before the filing of the petition. The right to a payment is nothing more or less than an enforceable obligation." *Id* at 560 quoting *Pennsylvania Dept. Public Welfare v. Davenport*, 495 U.S. 552 (1990).

Additionally, the Ninth Circuit Court of Appeals decided the case of *In re: Richard L. Priddis*; No. 22-15457, D.C. No. 2:21-cv-01053-JJT, in an unpublished memorandum dated February 24, 2023. While *Priddis* is not legal precedent, it reflects a well-reasoned analysis under 11 U.S.C. §303(b). *Priddis* involved a case nearly identical to the pending matter in which 14 Petitioning Creditors held a single $3 million judgment entered against the debtor and sought the prosecution of an involuntary petition against the debtor. The Bankruptcy Court and the District Court dismissed the involuntary petition for failing to satisfy the numerosity requirement of 12 petitioning creditors. On appeal to the Ninth Circuit, the Court found that each of the 14

petitioning creditors had a claim to the $3 million judgment, and therefore, the creditors satisfied the numerosity requirement. The court particularly noted the fact that counsel for the debtor had admitted at oral argument that each creditor had a right to payment of some portion of the judgment; "each Petitioning Creditor is entitled to a portion of the judgment based on its own ownership interests, and only that portion." *Id.* The Court followed the ruling in *In re Mid-America Indus., Inc.*, 236 B.R. 640 (Bankr. N.D.Ill. 1999) finding that shares of a judgment were separate claims based off interests alleged in the complaint, based on an informal oral sharing agreement reached by the petitioning creditors.

In the instant action, each of the Petitioning Creditors holds a *separate* claim based on a formal, signed sharing agreement. As such, they each hold a right to payment on those separate claims. Specifically, pursuant to the terms of the Collection Agreement, which are referenced in the Assignment, the division of proceeds on the judgment are to be divided "two-thirds (2/3) to the Walker Parties and one-third (1/3) to Halevy. Exhibits B and C. Furthermore, the debtor does not dispute that the judgment has been assigned to the Petitioning Creditors. Therefore, Petitioning Creditors meet the numerosity requirement of §303(b) as they each hold a separate claim based on a formal, signed sharing agreement that preceded the judgment, granting them each a right of payment based on their separate claims.

## 2. **THE DEBTOR IS GENERALLY NOT PAYING HIS DEBTS AS THEY BECOME DUE AND SUCH DEBTS ARE NOT THE SUBJECT OF A BONA FIDE DISPUTE AS TO LIABILITY OR AMOUNT**

### i. The Debtor is Generally Not Paying His Debts as They Become Due

In a controverted involuntary bankruptcy case, the petitioning creditors must prove that the debtor is generally not paying such debtor's debts as such debts become due." 11 U.S.C. §303(h)(1).

While unpublished, the Ninth Circuit Bankruptcy Appellate Panel's decision in *In re Morabito* (*ibid*), is highly instructive as having dealt with facts substantially like those in the instant matter. There, the Court reviewed the law on the factors to be taken into consideration when deciding whether a debtor is generally paying its debts as they come due when dealing

with a debtor paying his living expenses and other debts while excluding the debt he owed under a large judgment to the petitioning creditor of $77,000.000. The BAP determined that the debtor was not generally paying his debts as they became due. Specifically, the court noted that the 9th Circuit has "adopted a totality of the circumstances test for determining whether a debtor is generally not paying its debts under §303(h)." *Id*; *Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1072 (9th Cir. 2002) quoting *Hayes v. Rewald (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.)*, 779 F.2d 471, 475 (9th Cir. 1985). The court in *Morabito* noted that:

> A finding that a debtor is generally not paying its debts 'requires a more general showing of the debtor's financial condition and debt structure than merely establishing the existence of a few unpaid debts." *Id* quoting *In re Dill*, 731 F.2d 629, 632 (9th Cir. 1984). That the 'totality of the circumstances test' is not a rigid, mathematic analysis: 'the authority of the court is triggered and guided by the totality of the circumstances existing when the petition was filed. Congress intended to provide a flexibility which is not reducible to a simplistic formula.' *In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 779 F.2d at 475. '[I]t is not possible to lay down guidelines that fit all cases . . . . It is intended that the court consider both the number and amount [of debts] in determining whether the inability or failure is general.' 2 Collier on Bankruptcy ¶ 303.31 (16th ed.) (quoting Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 137, 93d Cong., 1st Sess. Pt. II, 75 n.5 (1973)). The Ninth Circuit has cited with approval an Eleventh Circuit decision holding that, '[i]n determining whether a debtor is generally paying its debts as they become due, courts 'compare the number of debts unpaid each month to those paid, the amount of the delinquency, the materiality of the non-payment, and the nature of the [d]ebtor's conduct of its financial affairs.' *In re Vortex Fishing Sys., Inc.*, 277 F.3d at 1072 (quoting *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1504 n.41 (11th Cir. 1997)).

*Morabito* at 19-20.

PETITIONING CREDITORS' TRIAL BRIEF- 14

Additionally, the Court cited *In re Bishop* (*ibid*) at 471 (9th Cir. 1985) for the proposition that "[t]he court may examine the Debtor's overall contemporaneous handling of its affairs in evaluating whether to order relief. If the Debtor is conducting his financial affairs in a manner inconsistent with good faith and outside the ordinary course of business, it may affect the court's determination." Id at 24.

Thus, the following factors have been consistently applied by courts in a totality of the circumstances analysis:

(1) the number of unpaid claims,

(2) the amount of claims,

(3) the materiality of nonpayment, and

(4) the overall conduct of the debtor's financial affairs. *Murrin v. Hanson (In re Murrin)*, 477 B.R. 99 (D. Minn. 2012). One additional notable case is that of *In re Feinberg*, 238 B.R. 781 (B.A.P. 8th Cir. 1999). There, the debtor owed a total of $2.3 million dollars to his 7 former partners and he and his wife timely paid all other debts and bills as they became due. The court there noted that the amount of delinquency to the petitioning creditors was "very large" and the debtor had been paying those debts he considered he should pay, rather than all just debts and thus it could not be said that he had been paying his debts or general obligations as they came due.

Here, the Petitioning Creditor's claims exceed 85% of Debtor's entire debt. As Debtor has not, and is not, paying this debt, it is irrelevant as to whether Debtor is paying his other debts when they become due as they make up such a small percentage of the overall debt. [Deposition of David Michal 10:14-24]. The debtor has denied receiving any income from his businesses (Legacy Partners, LLC, Raeven, Inc., and Stewardship Partners Group, among others) and stated that he lives off of his wife's income, available to him as community property. Such income is derived from a business, Stewardship Partners Group, LLC, an entity that the Debtor and his wife own with two other individuals (who both the Debtor and his wife have refused to identify, nor answer if they are related to him). Another of the debtor's businesses (either Reaven, Inc. or Legacy Partners, LLC., the debtor stated it was each of them at different times during his

PETITIONING CREDITORS' TRIAL BRIEF- 15

deposition), each owned and controlled by the debtor and his wife, received between $200,000 and $300,000 within the last year, from the sale of commercial property in North Carolina. None of that money was used to pay toward either of the judgments entered against the debtor, based on their decision not to. All the while, bank statements produced by the debtor and his wife show very substantial payments and airline purchases, and Disney Cruise Line reservations. Exhibits O through R. As such, it is abundantly clear that Debtor has not paid his debts as they become due. As it was noted in *Feinberg*, "[t]he record, and indeed, the bankruptcy court's opinion, is replete with debtor's actions in manipulating his and his wife's income, transferring assets, attempting to hinder and delay these creditors, while living lavishly." *Id.*

### ii. The Debtor's Debts are NOT the Subject of a Bona Fide Dispute as to Liability or Amount

The debtor does not argue that a bona fide dispute exists as either the amount or liability under the judgments entered against him (the only ones he is not paying). They are beyond dispute- the judgments became final years ago and are no longer subject to bona fide dispute.

### IV. CONCLUSION

The Petitioning Creditors have satisfied the requirements of 11 U.S.C. §303 and as such, the Court should grant relief against Debtor under that section.

Dated: May 17, 2023        LAW OFFICES OF HASTINGS AND RON

By: _____
CHARLES L. HASTINGS
Attorneys for Petitioning Creditors

PETITIONING CREDITORS' TRIAL BRIEF- 16