1

2   BRUCE C. DWIGGINS - SBN: 255550
    PATRICIA WILSON     - SBN: 103593
3   **DWIGGINS & WILSON BANKRUPTCY LAW**
    405 Redcliff Drive, Suite 100
4   Redding, CA 96002
    Telephone: 530-638-4445
5   Facsimile:  888-933-8858
6   Email: Redding@BankruptcyLawyerRedding.com

7   Attorneys for Involuntary Debtor
    Dave R. Michal
8

9                   UNITED STATES BANKRUPTCY COURT

10                  EASTERN DISTRICT OF CALIFORNIA

11

12  In re:                                  Case Number 22-22056

13  DAVE R. MICHAL,                         Chapter 7
                                            DCN: DBL-1
14

15                                          Trial Date: June 1, 2023
                                            Hearing Time:   9:00 a.m.
16           Involuntary Debtor.            The Hon. Fredrick E. Clement
                                            Courtroom 28, Department A
17  _____/

18                   **INVOLUNTARY DEBTOR' TRIAL BRIEF**

19                        **STATEMENT OF FACTS**

20          On August 18, 2022, Petitioning Creditors Sarah Halvey, David H. Walker,

21  individually and as trustee of the Sarah H. Walker Trust, and Marjorie B. Walker, individually,

22  filed an Involuntary Chapter 7 Petition against Involuntary Debtor Dave R. Michal, based on an

23  Assignment of Judgment.  Mr. Michal filed his Motion to Dismiss September 3, 2022 [Dkt. #7]

24                          **ISSUES FOR TRIAL**

25          There are two primary issues before this trial Court:

26          1.  Whether the Petitioning Creditors were eligible to file their Involuntary Petition as

27  three individual creditors, or whether they are but one single creditor; and,

28

                                    1

2. Whether Involuntary Debtor Dave Michal has fewer than 12 holders of unsecured claims to whom he was generally not paying his debts as they became due.

**Burdens of Proof:** At trial the Petitioning Creditors have the burden of proving by a preponderance of evidence compliance with the statutory requirements for an involuntary petition. *Cunningham v. Rothery* (*In re Rothery*) 143 F. 3d 546, 548 (9th Cir.1998).

**This Involuntary Petition Should Be Dismissed for Petitioner's Repeated Failure to Comply with Fed. R. Bankr. 1003(a)**

Petitioning Creditors ignored Federal Law and misled this Court and Involuntary Debtor when they filed their Involuntary Petition.

Fed. R. Bankr 1003(a) requires that petitioning creditors who have acquired an assignment of debt against an Involuntary Debtor must attach the following to the Involuntary Petition they file:

"A transferor or transferee of a claim shall annex to the original and each copy of the petition **a copy of *all* documents evidencing the transfer,** whether transferred unconditionally, for security, or otherwise, and a signed statement that the claim was not transferred for the purpose of commencing the case and setting forth the consideration for and terms of the transfer. *An entity that has transferred or acquired a claim for the purpose of commencing a case for liquidation under chapter 7 or for reorganization under chapter 11 shall not be a qualified petitioner.* [Emphasis Added.]

Despite the fact that each Petitioning Creditors described the nature of petitioners' claim as "Assignment of Judgment," the only document Petitioners attached to the Involuntary Petition was one paragraph that stated in its entirety:

"The Petitioning Creditors, who's [sic] signatures are below, hereby state they each received an assignment of a judgment against the debtor, David R. Michal. The assignment was not for the purpose of commencing this involuntary case against the debtor. The consideration of the transfer

2

was in settlement of a claim held by each of the undersigned against the previous holder of the judgment."

Petitioning Creditors knew at the time they signed that paragraph to convince this court to hold Mr. Michal as an Involuntary Chapter 7 Debtor, that on the same date that they accepted the Assignment of Judgment from Marshall Melton (April 26, 2021) all three Petitioners jointly executed a "Collection Agreement" whereby they would "jointly enforce the Judgment by together attempting to collect any and all amounts due thereunder."

When they filed the Involuntary Petition, Petitioning Creditors also knew that Paragraph 2, Page 2, of the Collection Agreement stated: "Enforcement. The Parties shall enforce the Judgment through their joint efforts."

In Paragraph 4, Page 2, of that Collection Agreement the parties further bound themselves together as one collector, stating: "Division of Collection Proceeds. The Parties shall own the Judgment jointly, the proceeds of which shall be divided two-thirds (2/3) to the Walker Parties and one-third (1/3) to Halvey."

On October 3, 2022, Petitioning Creditors filed an Amended Involuntary Petition against Mr. Michal. This time, they attached the Assignment of Judgment, dated April 26, 2021, from Marshall Melton to them, but again deliberately failed to attach their fully executed Collection Agreement to enforce that Judgment.

On December 19, 2022, North Carolina Lawyer Robert Deutsch, who represented Ms. Halvey in the preparation of the Collection Agreement, petitioned this Court to be admitted to the US Bankruptcy Court for the Eastern District of California and became co-counsel with Attorney Charles Hastings. Even then, Petitioning Creditors did not amend their Involuntary Petition to advise the Court of the Collection Agreement.

In fact, Petitioning Creditors **never** voluntarily advised the court or counsel for Involuntary Debtor Dave Michal of the existence of the Collection Agreement.

The Collection Agreement only came to the attention of Mr. Michal and his attorney, Patricia Wilson, on January 18, 2023, five months after the Involuntary Petition was filed,

through Ms. Wilson's cross-examination of Petitioning Creditor Sarah Halvey in her Zoom deposition.

Ms. Wilson asked Ms. Halvey whether there was any written agreement between her and the other Petitioning Creditors as to how they would share any amounts they might receive from Mr. Michal. Ms. Halvey said there was and described the Collection Agreement. Ms. Wilson then asked that a copy of the Collection Agreement be produced so that she could further examine Ms. Halvey about it. Ms. Wilson was given an unsigned copy for use during the deposition, with the representation that it was a duplicate of the document that had been signed. Ms. Wilson was later provided with a copy of the fully executed Collection Agreement, which has become **Joint Trial Exhibit C [JTE C]**.

Well established bankruptcy law holds that when one creditor owes one fixed sum to two or more named payees jointly ("pay to Smith and Jones") that creates a single right to payment that may be enforced only by both payees together. Therefore, both count as a single petitioning creditor. The Court found that, "The evident purpose in requiring at least three creditors with three claims . . . is to require at least some joint effort to launch an involuntary proceeding. If the co-owners of a single obligation qualify as separate claimants for this purpose, that legislative purpose would be frustrated." *In re Mid-America Industrial, Inc.* (BC ND IL 1999) 236 BR 640, 645.

Similarly, where Husband and Wife and their LLC obtained a judgment against a debtor for one indivisible sum, all three parties were treated as a single creditor for purposes of commencing an involuntary case against the debtor. *Huszti v. Huszti* (ED MI 2011) 451 BR 717 721-722. In the present case, that would certainly apply to Petitioning Creditors David H. Walker and his wife, Marjorie B. Walker and David Walker as David H. Walker as trustee of the Sarah H. Walker Trust.

As this Court is aware, the issue of numerosity has arisen virtually every time the parties have been before this Court. Much time and effort have been spent by counsel and the Court needlessly on this issue because Petitioning Creditors deliberately failed to properly file

1   or amend their Involuntary Petition to include the Collection Agreement by which they

2   voluntarily obligated themselves to act as one creditor for collection purposes.

3      Involuntary Debtor submits that the appropriate sanction against Petitioning Creditors

4   for such deliberate and continuing violations of Fed. R. Bankr. 1003(a) would be dismissal of

5   Petitioners' Involuntary Petition at this time.

6

7      **Petitioner's Burden of Proof that Involuntary Debtor has fewer than 12 holders**

8   **of claims and that he is generally not paying his undisputed debts as they become due.**

9      Should this Court not dismiss this Involuntary Petition outright, the remaining issue

10   for this Court to decide, is whether Petitioning Creditors prove that Involuntary Debtor Dave

11   Michal had fewer than 12 creditors holding undisputed, unsecured debts and that he is generally

12   not paying those debts "as they become due." 11 U.S.C. § 303(b), (h).

13      **The Size of the Claim is Immaterial:** The 9th Circuit Court long ago held that even

14   creditors with *de minimus* claims (e.g., unpaid monthly utility bills) count in determining the

15   number of creditors involved. *In re Okamoto* (9th Cir. 1974) 491 F2d 496. 497-498 – where

16   most debts were for less than $60.

17      As the Court in *Okamoto, supra,* stated, "Regardless of how wise and salutary

18   exclusion of small, recurring claims might be, Congress has not specifically authorized

19   exclusion, and in the absence of any indication that Congress intended this exclusion, we have

20   no authority to engraft it onto those that Congress expressly provided. We hold that bona fide

21   small, recurring claims must be included in the § 303(b)(2) count. See *In re Okamoto*, 491 F.2d

22   496, 497-98 (9th Cir. 1974).

23      Many other Circuits adopted that same position. See *Theis v. Luther*, 151 F.2d

24   397, 398 (8th Cir. 1945), cert. denied, 327 U.S. 781, 66 S.Ct. 681, 90 L.Ed. 1009 (1946);

25   *Grigsby-Grunow Co. v. Hieb Radio Supply Co.*, 71 F.2d 113, 114-15 (8th Cir. 1934); *In re*

26   *Colorado Lime Co.*, 298 F. Supp. 1053, 1055-56 (D.Colo. 1969); *In re Kirk*, 198 F. Supp. 771

27   (S.D.Pa. 1961); *In re Murray,* 14 F. Supp. 146, 147 (W.D.N Y 1936); *In re Hall*, 27 F.2d 999,

28

1000 (W.D. Pa. 1928); *In re Alden*, 2 F.2d 61, 62 (D.Mass. 1924); *In re Brown,* 111 F. 979, 980 (C.C.E.D.Mo. 1901)."

Mr. Michal submits that Petitioning Creditors will be unable to meet their burden of proof on this issue, and, therefore, the Involuntary Petition should be dismissed.

Mr. Michal filed a list of 12 creditors who were holders of claims that Mr. Michal was paying on a regular basis. However, three of those were secured creditors. Through discovery, Mr. Michal provided Petitioners' counsel with bank statements and creditor documentation proving that the nine remaining identified creditors and at least three other unsecured creditors were being paid by Mr. Michal on a regular basis.

Those 12 creditors and the payments made to them by Mr. Michal are listed below:

Mr. Michal has been married to his wife, Christine Michal, for 26 years. All assets they have were acquired during that marriage and all debts they presently have were also acquired during marriage. Ms. Michal earns a salary, has a Cornerstone Community Bank account in her name, and regularly pays all personal obligations of both herself and Mr. Michal out of that Cornerstone Community Bank account. During this case, Ms. Michal's Cornerstone Community Bank statements dated June 3, 2022, to November 2, 2022, were requested in discovery by counsel for Petitioning Creditors and were provided to them. Copies of those statements are also included in the parties' Joint Exhibits binder as **Exhibits I through N**. The creditors on Mr. Michal' list and to whom regular payments are made are set forth below.[1]

Thereafter, counsel for Petitioning Creditors deposed Ms. Michal and questioned her at length about the entries in her Cornerstone Community Bank statements.

When Petitioning Creditors filed their Involuntary Petition, Involuntary Debtor Dave Michal had the following unsecured creditors to whom he had been making regular payments:

---

[1] Joint Exhibits I-N are copies of Cornerstone Community Bank Statements from June 3 to November 3, 2022 from which payments were regularly made to Mr. Michal's creditors. Joint Exhibits O-Z are copies of statements from the Creditors who received those payments.

6

**Creditor No. 1 - JP Morgan Chase Visa Credit Card #2858**

Mr. Michal has not been able to access any credit card statements or other documentation from Chase since the Involuntary Petition was filed. In fact, Mr. Michal first found out he had been thrown into a bankruptcy when he tried to use this credit card and it was rejected, even before Mr. Michal had been served with the Involuntary Petition. As a result, Mr. Michal has not been able to obtain records reading this JP Morgan Chase creditor to show how much he had paid to Chase in the months before the case was filed, to prove that he had been regularly paying this creditor's bills as they came due. It is Mr. Michal's recollection that he owed Chase approximately $10,000 on this card when the Involuntary Petition was filed.

**Creditor No. 2 – Capital One**

This Capital One account was in Mr. Michal's name. Capital One also cut him off from all access to this account as soon as the Involuntary Chapter 7 Petition was filed. As a result, Mr. Michal was not able to access pre-petition statements to obtain payment records. Neither was he able to make post-petition payments to Capital One. However, six days after Mr. Michal was served with the Involuntary Petition, his counsel, Patricia Wilson, ran a credit report for Mr. Michal, which he reviewed at the time. It showed that 12 monthly payments had been timely made prior to the filing of the Involuntary Petition.

**Creditor No. 3 – Citi/- Credit Card #6494** [Jt. Ex. O]

The following pre-petition and post petition payments were made from Cornerstone Community Bank Account #1612 and applied to two CitiBank credit cards:

**Payments Made:**

May 26 - $1,489.61 [**Jt. Ex. I, pg.1**]

June 22 - $2,473.93 [**Jt. Ex. J, pg. 1**]

July 21 - $1,505.07 [**Jt. Ex. K, pg.1**]

August 30 - $9,075.34 [**Jt. Ex. L, pg.1**]

7

**Citi/Costco Visa - <u>Credit Card #9752</u>**

**Payments Made:**

August 25 - $224.44   **[Jt. Ex. L, pg. 1]**

August 30 - $9,075.34 **[Jt. Ex. L, pg. 2]**

September 14 - $4,997.23 **[Jt. Ex. M, pg. 1]**

**Creditor No. 4 - Shasta County Tax Collector** (residential property taxes assessed and due July 1, 2022.)

    **Joint Ex Z** - 2022-2023 Property Tax Bill for July 1, 2022 - June 30, 2023 for the Michal's residence. This bill was due when assessed and way paid in December, 2022

**Creditor No. 5 - State Farm Ins.** (house, vehicles, personal property, and umbrella policies)

    **Joint Ex. S** -State Farm's Billing History - Payments received through Cornerstone Community Bank Acct. #1612:

**Payments Made:**

    May 24 - $736.58   **[Ex. I, p. 1]**

    June 21 - $692.18   **[Ex. J. p. 1]**

    July 21 - $737.34   **[Ex. K, p.1]**

    September 23 - $737.34   **[Ex. M, p. 1]**

    October 24 - $737.34   **[Ex. N. P. 1]**

**Creditor No. 6 – City of Redding Utilities**

    **Joint Ex. V** - Complete Payment History from April 13,2021 - October 3, 2022

    June 2 - $287.49   **[Ex. I, p. 1]**

    June 30 - $352.26 **[Ex. J, p. 2]**

    August 4 - $483.71 **[Ex. K, p. 2]**

    September 2 - $568.36 **[Ex. L, p. 2]**

8

October 4 - $603.55  **[Ex. M, p. 3]**

November 2 - $388.21 **[Ex. N, p. 3]**


**Creditor No. 7 - Pacific Gas & Electric (natural gas)**

**Joint Ex. AA** - Billing & Payment History

May 24 - $40.51  **[Ex. I, p. 1]**

June 21 - $53.08  **[Ex. J, p. 1]**

July 21 - $43.64  **[Ex. K, p. 1]**

August 23 - $36.98  **[Ex. L, p. 1]**

September 14 - $35.94  **[Ex. M, p. 1]**

October 20 - $35.72  **[Ex. N, p. 1]**


**Creditor No. 8 - Spectrum (Internet and television)**

**Joint Ex. W** – Payments Received March 30, 2022 -August 30, 2022:

May 26 - $94.88 **[Ex. I, p. 2 ]**

June 30 - $94.98  **[Ex. J, p. 2]**

July 1 - $94.88  **[Ex. K, p. 2]**

October 20 - $189.96  **[Ex. N, p. 3]**


**Creditor No. 9 – Direct TV**

**Joint Ex. X** - Direct TV's Accounting of Payments Posted from May 25, 2022 to September 27, 2022 at $72.13per month.


**Creditor No. 10 - Verizon (Cell Phones)**

**Joint Ex Y -** Verizon Bill for September 22, 2022

**Payments made from Cornerstone Bank #1612**

May 31 - $214.74  **[Ex. I, p. 2]**

June 30 - $193.15  **[Ex. J, p. 2]**

9

August 1 - $201.10  [**Ex. K, p. 2**]

August 29 -$201.10  [**Ex. L, p. 2**]

September - $200.00 [**Ex. M, p. 2**]

**Creditor No. 11 - Clark Pest Control -** Continuous services paid bi-monthly.

June 6 - $70.00   [**Ex. J, p. 2**]

August 4 - $70.00  [**Ex. K, p.2**]

October 28 - $162.36 [**Ex. N, p. 3**]

**Creditor No. 12 - AT&T -** Continuous service, billed and paid monthly.

June 27 - $72.13  [**Ex. J, p. 2**]

July 28 - $72.13   [**Ex. K, p. 2**]

August 29 - $72.13  [**Ex. L, p. 2**]

September 28 - $72.13  [**Ex M, p. 3**]

**Creditor No. 13: Forest Design and Landscaping**

Mr. Michal has also regularly paid $294 a month for basic monthly landscaping maintenance an additional work as needed.

Debtor's continued post-petition payments to these creditors are authorized by statute. 11 USC §303(f)  provides that ". . . [E]xcept to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced."

CONCLUSION

Alleged Debtor Dave Michal is aware of Petitioning Creditors' position that this Court should consider the percentages of debt that Mr. Michal continues to pay vs. the percentage of debt that the Petitioners collectively hold, and the case law they cite in support of

10

1   their position.  However, in those cases, are distinguishable from the present case in that those

2   alleged debtors had entered into contracts with their creditors and personally obligated

3   themselves to those creditors, then defaulted on their commitments to the creditors.

4           Alleged debtor requests that this Court find that Petitioning Creditors have failed to

5   meet their burdens of proof in this case and dismiss the Involuntary Petition against him.

6

7   DATED: May 18, 2023.

8                                               /s/ Patricia Wilson
                                                PATRICIA WILSON
9                                               Attorney for Alleged Debtor Dave R. Michal

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11