```
LAW OFFICE OF WILLIAM J. HEALY
WILLIAM J. HEALY, #146158
748 Holbrook Pl.
Sunnyvale, CA 94087
Telephone:  (408) 373-4680

ATTORNEYS FOR
ELDENA CROSS, INDIVIDUALLY AND
AS TRUSTEE OF THE CROSS FAMILY
TRUST DATED NOVEMBER 12, 2008
```

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

(Sacramento Division)

| | |
|---|---|
| In re:<br><br>DAVID R. MICHAL,<br><br>            Debtor.<br><br>_____ | Case No. 22-22056-A-7<br><br>Docket Control Nos. DM-1, RLL-1<br><br>**OPPOSITION TO COUNTERMOTION FOR AN ORDER DEEMING PROOF OF CLAIM TIMELY FILED**<br><br>Hearing Date: January 10, 2024<br>Hearing Time: 10:00 a.m.<br>Dept. C (Courtroom 35)<br>Hon: Christopher M. Klein |

     COMES NOW, ELDENA CROSS, INDIVIDUALLY AND AS TRUSTEE OF THE CROSS FAMILY TRUST DATED NOVEMBER 12, 2008 (jointly "Cross" or "CROSS") and submits the following OPPOSITION TO COUNTERMOTION FOR AN ORDER DEEMING PROOF OF CLAIM TIMELY FILED ("Opposition") to the counter motion of Steven D. Schisler ("Schisler" or "Claimant") for an order deeming his proof of claim timely filed (Dkt#240)("Motion"):

**I. The Court Should Deny the Motion As It Fails to Satisfy the Pioneer Requirements.**

     The Motion must be denied because it fails to address, much less satisfy, the requirements for submission of a tardily filed claim as those requirements are set forth in *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993).

     In *Pioneer*, the Supreme Court set forth four (non-exhaustive) factors for a court to consider when determining whether there was excusable neglect: "(1) the danger of prejudice ; (2) the length of the delay

and its potential impact on proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993).

Under the first *Pioneer* factor—the danger of prejudice—relevant factors include the size of the late claim, whether allowing the claim would force a return of amounts already paid out, whether the debtor had advanced knowledge of the late claim, and whether allowing the late claim would precipitate a flood of similar claims. *In re Enron Corp.*, 419 F.3d 115, 130 (2d Cir. 2005).

In addition, in a liquidation-type bankruptcy (where the aim is prompt closure and distribution of the debtor's estate instead of rehabilitation of the debtor (*see Pioneer*, 507 U.S. at 389; *see also In re LAN Associates XIV, L.P.*, 193 B.R. 730, 738 (Bankr. D.N.J. 1996))), courts have found prejudice where allowance of the late claim might be challenged on substantive grounds, since such challenge would delay the distribution and result in additional administrative expenses. *See, e.g.*, *LAN Associates*, 193 B.R. at 738-39.

This Opposition notes two primary points relating to the danger of prejudice, the size of the claim and the effect on judicial proceedings (both in the delay in administration and extra expenses of administration).

**A. The $10 million or $100 million Amount Confirms the Claim is Prejudicial.**

Claimant's claim, as asserted, is either $10,000,000 or $100,000,000.

The stated amount of the claim depends on whether one assumes there is a typo between the $10 million references and the $100 million reference.[1]

Claimant's claim, assuming its $10 million at its stated amount, almost equals the total of all of the creditor claims and is almost more than the two central creditors, both supported by judgments, namely Cross at $1,521,225.73 and the Petitioners (Halevy and Walkers) at a combined $4,792,732.83.

Further, the amount of the claim insures a prejudicial effect on these judicial proceedings though a at least a delay in administration and extra expense of administration. Claimant's claim is substantially different from the claims of the timely filed claims, it is the only one subject to any material dispute, it is the only one not supported by documents, and is the only one which is certain to generate objections and

---

[1] This assumption may be an error because presumably Schisler, before, during, and after executing this claim under penalty of perjury, did any math to determine the amount of the claim and found some basis to assert a fixed interest rate of 8% on the claim.

require formal administration. The one page Memorandum of Understanding attached to the claim specifically states it is contingent upon the execution of Note Purchase Agreement and a Subordinated Convertible Promissory Note. Neither of these documents are attached to the claim or the Motion. In addition, the Memorandum of Understanding indicates that Claimant would receive shares of VisionCare Devices in exchange for no more than 20 hours a quarter for 2 years (that's a maximum of 80 hours a year or 160 hours for 2 years). Cross submits that it is extremely generous or fortunate to somehow be entitled to $10 million or $100 million in exchange for no more than 160 hours of work over 2 years—and for work likely never performed!

The amount of the claim, the assertion that it is secured, the fact that it not supported by any evidence of a valid agreement, and is certain to delay administration and generate additional administrative expenses supports finding a substantial danger of prejudice.

**B. Second *and Third Pioneer* Factor: Length of Delay and Reason For Delay.**

Regarding the second *Pioneer* factor—length of delay— there is no bright-line rule and the lateness must be considered with respect to the context of the proceeding as a whole and whether allowing the late claim would be disruptive to judicial administration of the case. *See Enron*, 419 F.3d at 128. The reason(s) for the delay can be most telling.

There are three delay periods at issue: Claimant's delay prior to the bankruptcy, after Claimant's alleged notice of the Bankruptcy Case, and in filing this Motion.

The Motion does not address why Claimant never took any action to recover the $10 million or $100 million, the shares in VisionCare Devices, or the claimed collateral.

The Motion suggests Claimant only became aware of the Bankruptcy Case and the Proof of Claim deadline on October 24, 2023, yet the Motion doesn't explain why Claimant did not file a motion for relief from the tardily filed claim until AFTER the Debtor filed his Objection to Claim (Dkt.#235) on November 14, 2023 and still can't produce support documents beyond the single attachment to the claim.

Further, allowing the late claim would be disruptive to judicial administration of the case. As discussed hereinabove, this tardily filed claim is certain to disrupt administrative of the case, both in delays in administration and cost of administration.

While the Trustee is duty bound to carry the laboring oar on challenging this claim, it may be that

1 the creditors, primarily the Petitioning Creditors and/or Cross, unfairly incur some or all of that burden.

2 **C. Fourth *Pioneer* Factor: Good Faith.**

3 Regarding the fourth *Pioneer* factor, there is nothing in the record that indicates that Claimant has
4 acted in good faith.

5 The record confirms, or at least strongly suggests, Claimant has acted in bad faith.

6 Thus far, it appears Claimant never took any action to enforce the Memorandum of Understanding,
7 has not produced the 2 executed documents required to make the Memorandum of Understanding effective,
8 has not explained he would be entitled to $10 million or $100 million for less than 160 hours of work over
9 2 years, why his claimed is allegedly secured, where the 8% interest rate came from, whether he received
10 the shares is VisionCare Devices, and why he didn't file the motion for relief for the tardily filed claim
11 until AFTER the Debtor filed his Objection to Claim.

12 **II. Conclusion.**

13 The Motion must be denied because it fails to address, much less satisfy, the requirements for
14 submission of a tardily filed claim as those requirements are set forth in *Pioneer Inv. Services Co. v.*
15 *Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993).

16 Dated: January 2, 2024　　　　　　　LAW OFFICE OF WILLIAM J. HEALY
　　　　　　　　　　　　　　　　　　　　*/s/ William J. Healy*
17 　　　　　　　　　　　　　　　　　　　William J. Healy